UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

UNITED STATES OF AMERICA,

            Plaintiff,                          Case No. 1:24-cr-20684

v.                                               Honorable Thomas L. Ludington
                                                    United States District Judge

DEMARIO DOSS,

            Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS**

Currently before the Court is Defendant Demario Doss's motion to suppress broad, unidentified evidence from the search of a car he does not own. As explained below, Defendant's motion will be denied.

**I.**

In the early morning on October 23, 2024, Michigan State Police (MSP) Troopers Stockmeyer and Harrington were on patrol in Saginaw County, Michigan. *See* ECF Nos. 21 at PageID.60; 26 at PageID.72. Around 2:30 AM, the Troopers conducted a traffic stop after observing an uninsured Chevy Malibu with tinted windows traveling 45 miles per hour in a 35-mile-per-hour zone. ECF No. 26 at PageID.72. Ms. Amarive Shaw owned the Malibu and was driving it, while Defendant Demario Doss was seated in the front passenger seat. *See id.*; ECF No. 21 at PageID.61.

Trooper Harrington approached the driver's side of the Malibu and asked Ms. Shaw for her license, registration, and proof of insurance. ECF No. 26 at PageID.72. But, consistent with the Troopers' earlier Law Enforcement Information Network (LEIN) search, Ms. Shaw did not have proof of insurance. *Id.* Trooper Stockmeyer approached the passenger side of the Malibu and asked

Defendant for his identification. *Id.* at PageID.73. According to Trooper Stockmeyer, Defendant was "sweating like a motherfucker" and looked "nervous as fuck." *See* Bodycam at 3:25, 4:45, 6:33–6:47, 7:11–7:20; 10:52.[1] The two Troopers returned to their MSP vehicle, ensured that neither Shaw nor Defendant was subject to active warrants, and called for backup to conduct an inventory search of the Malibu since it was uninsured. *See id.* at 2:30–10:45; *see also* MICH. COMP. LAWS § 500.3102(2) ("An owner or registrant of a motor vehicle . . . who operates [it] . . . in this state, without having [insurance] is guilty of a misdemeanor.").

Around 2:40 AM, two other MSP Troopers—Trooper Morse and Trooper Oliver—arrived on the scene. Bodycam at 10:45–11:00. Trooper Stockmeyer then re-approached the passenger side of the Malibu with Trooper Oliver, who observed a "half full open bottle of tequila" on the floor of the back passenger seat, immediately behind Defendant. ECF No. 26 at PageID.73. So Trooper Stockmeyer asked Defendant to step out of the car, placed him in handcuffs, and told him he was being handcuffed for the "open intox." Bodycam at 11:00–13:15. Defendant consented to a pat down, and Trooper Stockmeyer asked if there was "anything in the car." *Id.* at 12:13–12:45. Defendant said "no." *Id.* at 12:45.

But, in a subsequent search, Trooper Morse found a loaded Polymer80 pistol and ammunition in the front passenger glovebox. *Id.* at 14:05–14:17; *see also id.* at 16:33–16:40; ECF No. 26 at PageID.74. The pistol had no serial number. ECF No. 26 at PageID.74. Ms. Shaw was placed in an MSP vehicle, and Trooper Stockmeyer interviewed her through the window after reading her *Miranda* rights. Bodycam at 25:42. Ms. Shaw indicated that she understood these

---

[1] In response to Defendant's motion to suppress, the Government filed Trooper Stockmeyer's body camera footage. *See* ECF Nos. 27; 28.  The footage does not depict the initiation of the traffic stop and instead begins with Trooper Stockmeyer exiting the MSP vehicle after the Malibu was stopped on the side of the road. *See* Bodycam at 0:00–0:15. Although this footage does not appear on the docket, it remains on electronic file with this Court.

rights and was "willing to give [them] up" and answer Trooper Stockmeyer's questions. *Id.* at 26:15–26:25. When asked who owned the gun, Ms. Shaw answered "whoever was in the car with me [be]cause it ain't mine." 27:15–27:23. Indeed, Trooper Stockmeyer asked, "is it Mr. Doss's gun?" and she responded, "it gotta be [be]cause it ain't mine." *Id.* at 27:42–27:47. Although Ms. Shaw stated that she never saw Defendant open the glovebox, she suggested he may have placed the gun there while she left him in the car to go inside a liquor store earlier that morning. *Id.* at 28:30–29:00.

Trooper Stockmeyer then approached Defendant, who was handcuffed and standing outside another MSP vehicle. *See id.* at 30:00. He then read Defendant's *Miranda* rights, *id.* at 30:35–30:59. Unlike Ms. Shaw, Defendant stated that he did not wish to answer Trooper Stockmeyer's questions. *Id.* at 30:55–31:00. Trooper Stockmeyer informed Defendant that he was being arrested for "CCW" and for being a felon in possession of a firearm. *Id.* at 31:00–31:20, Defendant repeatedly denied having a gun. *See id.* at 31:00–35:05.

On December 11, 2024, the Grand Jury returned an indictment charging Defendant with being a felon in possession of ammunition, in violation of 18 U.S.C. § 922(g)(1). ECF No. 1 at PageID.1 (alleging Defendant possessed "10 rounds of 9mm ammunition"). On June 11, 2025, Defendant filed a motion to suppress on the grounds that the MSP Troopers did not have probable cause to search the Malibu.[2] ECF No. 21. The Government responded on July 2, 2025, ECF No. 26, but Defendant did not reply.

---

[2] Defendant also seeks an evidentiary hearing. ECF No. 21 at PageID.59. But he is not entitled to one. "An evidentiary hearing is required only if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Abboud*, 438 F.3d 554, 588 (6th Cir. 2006). Here, Defendant's three-page motion is nondefinite and nonspecific. *See* ECF No. 21. And the Parties agree on all relevant facts, which are otherwise supported by body camera footage. *Compare* ECF No. 21 *with* ECF No. 26. Moreover, the Sixth Circuit has held that defendants are

## II.

Defendant's Motion to Suppress will be denied for three reasons.

First, and most importantly, Defendant does not have standing to challenge the search of Ms. Shaw's Malibu. Technically, the term "standing" is somewhat imprecise in the context of Fourth Amendment suppression. *See Minnesota v. Carter*, 525 U.S. 83, 88 (1998). "But the Sixth Circuit continues to use the term 'standing' to refer to whether a Defendant has an objectively reasonable expectation of privacy in the place searched or the things seized to assert a cognizable Fourth Amendment challenge." *United States v. Andrews*, No. 1:22-CR-20114-2, 2024 WL 578571, at *3 (E.D. Mich. Feb. 13, 2024); *see also United States v. Russell*, 26 F.4th 371, 374 (6th Cir. 2022) (noting "standing" is "shorthand" for a suppression movant's showing that their personal Fourth Amendment rights were violated throughout a search or seizure). Each Defendant seeking suppression has the burden of demonstrating standing. *Minnesota v. Carter*, 525 U.S. 83, 88 (1998); *United States v. Noble*, 762 F.3d 509, 526 (6th Cir. 2014).

Defendant has not even attempted to meet this burden. Nor could he. The Sixth Circuit has routinely recognized that passengers lack standing to challenge searches of cars they do not own.[3]

---

not entitled to evidentiary hearings when their suppression arguments are "entirely legal in nature." *Id.*; *see also United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019). Defendant's sole argument—predicated on probable cause—is entirely legal in nature. *United States v. Neuhard*, 149 F. Supp. 3d 817, 827 (E.D. Mich. 2016), *aff'd*, 770 F. App'x 251 (6th Cir. 2019).

[3] Defendant likely would have standing to challenge the *initiation* of the traffic stop and his subsequent detention. *See United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015) ("Passengers have standing to contest the lawfulness of their *seizure*[.]" (emphasis in original)). But Defendant does not argue that MSP lacked probable cause to pull the Malibu over—he instead solely argues that MSP lacked probable cause to *search* the Malibu after it was stopped. *See* ECF No. 21 at PageID.62–63. And any argument that the initial traffic stop violated the Fourth Amendment would fail. Officers "must have probable cause to make a stop for a civil infraction, and reasonable suspicion of an ongoing crime to make a stop for a criminal violation." *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). The MSP Troopers here had both. The Troopers had had probable cause that the Malibu violated at least two civil traffic laws. *See* MICH. COMP. LAWS §§ 257.709 (prohibiting tinted windows), 257.627 (prohibiting speeding). And the Troopers had a reasonable

*See, e.g.*, *United States v. Bah*, 794 F.3d 617, 626 (6th Cir. 2015); *United States v. Decker*, 19 F.3d 287, 288–89 (6th Cir. 1994); *United States v. Ellis*, 497 F.3d 606, 612 (6th Cir. 2007). So has the Supreme Court. *See Rakas v. Illinois*, 439 U.S. 128, 148-49 (1978) (affirming lower court's refusal to suppress evidence from a search of a third-party's car when the passenger defendant "made no showing that they had any legitimate expectation of privacy in the glove compartment"). Because Defendant does not dispute that Ms. Shaw owned the Malibu, and does not proffer any other possessory interest in it, *see generally* ECF No. 21, he lacks standing to challenge the search.

Second, even if Defendant had standing to challenge the search, it was reasonable. True, the search was warrantless. *See United States v. Smith*, 510 F.3d 641, 647 (6th Cir. 2007) ("Generally, the Fourth Amendment requires police officers to obtain a warrant prior to conducting a search."). But "the Supreme Court has long recognized an exception to the warrant requirement with respect to searches of vehicles." *Id.* (citing *Carroll v. United States*, 267 U.S. 132 (1925)). Under this "automobile exception," officers "may conduct a warrantless search of a vehicle if they have 'probable cause to believe that the vehicle contains evidence of a crime.'" *Id.* (quoting *United States v. Lumpkin*, 159 F.3d 983, 986 (6th Cir. 1998)). This exception applies here, where the MSP Troopers observed an open bottle of tequila in plain sight—sitting on the rear passenger floor of the Malibu immediately behind Defendant's seat—in violation of Michigan law. *See* MICH. COMP. LAWS § 257.624a. Because the Troopers thus "had probable cause to search for any other similar

---

suspicion of ongoing criminal activity because, before they stopped the Malibu, they searched its license plate "through the Law Enforcement Information Network (LEIN)" and confirmed the car was uninsured. ECF No. 26 at PageID.72 In Michigan, knowingly driving a car without insurance is a criminal misdemeanor offense. *See* MICH. COMP. LAWS § 500.3102(2). Indeed, this Court has repeatedly recognized that officers have probable cause to initiate a traffic stop when LEIN searches reveal that a car is uninsured. *See, e.g.*, *Coates v. City of Detroit*, No. 22-CV-10378, 2024 WL 1606064, at *3 (E.D. Mich. Apr. 12, 2024); *United States v. Lawrence*, 425 F. Supp. 3d 828, 833 (E.D. Mich. 2019).

contraband," their warrantless search did not violate the Fourth Amendment. *United States v. Howton*, 260 F. App'x 813, 817 (6th Cir. 2008). And even if the Troopers had not discovered the open bottle of tequila, the search still would have likely been lawful. This Court has recognized that officers can permissibly "impound" vehicles driven without insurance because such conduct violates Michigan law. *United States v. Lawrence*, 425 F. Supp. 2d 828, 833 (E.D. Mich. 2019). And it is well-recognized that officers can conduct a warrantless "inventory search" of cars "impounded or otherwise in lawful police custody where the process is aimed at securing or protecting the car and its contents." *S. Dakota v. Opperman*, 428 U.S. 364, 373 (1976); *accord United States v. Smith*, 510 F.3d 641, 651 (6th Cir. 2007).

Third, and finally, Defendant's Motion to Suppress will be denied because Defendant did not identify the evidence he seeks to exclude. Violations of the Fourth Amendment do not automatically result in suppression at trial. Under the exclusionary rule, only those specific pieces of evidence that were obtained from an unconstitutional search or seizure—the "fruit[s] of the poisonous tree"—are excluded, absent attention or exception. *See generally United States v. Pearce*, 532 F.3d 374, 381 (6th Cir. 2008); *Davis v. United States*, 564 U.S. 229, 236–37 (2011). Here, even assuming Defendant had standing to challenge the search—he does not—and assuming the search violated the Fourth Amendment—it did not—Defendant has not identified any poisonous fruits. His three-page motion merely concludes that "the evidence should be suppressed." ECF No. 21 at PageID.62. This is insufficient. *See United States v. Blakeney*, 942 F.2d 1001, 1015 (6th Cir. 1991) ("In the context of a motion to suppress, the moving party has the burden of establishing that . . . evidence was secured by an unlawful search.").

- 7 -

## III.

Accordingly, it is **ORDERED** that Defendant's Motion to Suppress, ECF No. 21, is **DENIED**.

**This is not a final order and does not close the above-captioned case.**

Dated: July 30, 2025                                  s/Thomas L. Ludington
                                                     THOMAS L. LUDINGTON
                                                     United States District Judge